## A. B. GEORGE ET AL. v. NANNIE W. TAYLOR.

(Case No. 2750.)

1. SETTING ASIDE A NON-SUIT.— The action of a court in reinstating a case on motion, in which a non-suit has been taken, is controlled by no fixed rules, but rests in the discretion of the court.
2. FRAUDULENT CONCEALMENT OF FACTS.— When one pays money in ignorance of circumstances with which the receiver is acquainted but does not disclose, and which, if disclosed, would have avoided the payment, the receiver acts fraudulently and the money may be recovered back.

APPEAL from Guadalupe. Tried below before the Hon. G. H. Noonan.

Suit by Taylor against John E. George, Moses B. George

and Joseph Zorn, Jr. The judgment is against Moses B. George and Joseph Zorn, and Zorn alone appeals.

Plaintiff alleged that J. E. and M. B. George and L. B. Taylor were partners, trading in mules, and that M. B. George sold eight of the mules to one Alexander for $800, and received in payment therefor Alexander's draft on Phelps, McCulloch & Co., New Orleans, payable to L. B. Taylor, who indorsed the same for purpose of collection, and sent it to his commission merchant in New Orleans to be collected. Payment being refused, the draft, by request of M. B. George, was left with J. B. Hood & Co. The drawees of the draft refused to pay it, being instructed so to do by Alexander (the drawer), because M. B. George had swindled him in the mules, in not delivering the mules he had purchased, and that the mules delivered to him were subject to the order of Taylor and George.

M. B. George, on settlement, or division of the partnership property, took this draft as part of the share of the Georges, and in 1869 sold the draft, while still in the possession of J. B. Hood & Co., to J. Zorn; that, previous to the sale, Zorn said Hood had been instructed by M. B. George to compromise with Alexander by taking back the mules, and that Alexander had, previous to the sale of the draft to Zorn, shipped the mules to Hood as directed; that Hood, by instruction of M. B. George, sold the mules and credited George with the proceeds; that Zorn, in 1870, presented the draft to appellee (L. B. Taylor, her husband having died) for payment, and that she paid on the same $400, and took up the draft, with the intention of proceeding against Alexander on the draft, when she learned that the draft had been paid by Alexander by the return of the mules; charging that Zorn well knew that the draft had been settled, and that he and the Georges colluded together for the purpose of swindling plaintiff; praying for exemplary damages, etc.

The defendants demurred to the petition and pleaded a general denial.

The defendants amended their answer, Zorn denying fraud and collusion, and alleging that he received the draft for a valuable consideration, and that he presented it to plaintiff for payment, and that after much delay, W. M. Rust, plaintiff's agent, paid Zorn $400 on the draft and took it up, he, Zorn, having authority from J. E. George to settle in this way, and the $400 having reimbursed him for what he advanced on the draft.

The Georges alleged that J. E. George and L. B. Taylor were the partners, and M. B. George their agent; that in the division of the partnership effects between Taylor and J. E. George, Taylor took the money on hand and part of the notes, and J. E. George took notes, among which was the Alexander draft, and that it was agreed between Taylor and J. E. George that each should bear his proportion of all loss on the bills and notes; that the mules were sent to New Orleans, and sold by Hood, with the knowledge and consent of Taylor, and that J. B. Hood & Co. held the proceeds for Taylor and J. E. George; that Zorn having advanced $400 on the draft, and Taylor being liable for one-half of the draft, Zorn was instructed to take the half, $400, in settlement; and that M. B. George, to whose credit on the books of J. B. Hood & Co. the proceeds of the mules were placed, gave to W. B. Taylor, agent of plaintiff, an order on J. B. Hood & Co. for one-half the proceeds.

On the 21st of November, 1871, the case was submitted to a jury and plaintiff took a non-suit, and on the 24th of November, three days after the non-suit, filed a motion to reinstate the case.

The case was reinstated over the objections of defendants, both on the ground that the motion was not filed within two days after the rendition of the judgment, and because there was no merit in the application, and defendants took a bill of exceptions thereto.

In December, 1874, plaintiff amended her petition, alleging that George took the Alexander draft at his own risk, and that she paid Zorn the $400, supposing the mules to be then in the possession of Alexander, and that she could be reimbursed out of their value.

Jury waived, and judgment was rendered for plaintiff against M. B. George and Z. Zorn for $546.75.

Zorn alone appealed.

*W. E. Goodrich* and *A. M. Jackson, Jr.*, for appellants.

*Ireland & Rust*, for appellee.

QUINAN, J. COM. APP.— The errors assigned in this case are:

1st. The court erred in its order of December, 1871, reinstating the above case, because there was no merit in the application to reinstate, and because the motion was not filed within the two days required by the statute.

2d. The judgment of the court is erroneous and should have been for the defendant.

3d. The court erred in overruling defendant's motion for a new trial.

4th. The judgment of the court is contrary to the law and the evidence, and especially as to the defendant Zorn.

The grounds for granting a new trial are, that the judgment is not warranted by the law and evidence, and that "the evidence showed no collusion or fraud on Zorn's part, or circumstances from which it could be inferred, but that he simply acted as agent in collecting said money for George," and had accounted with him.

1. The action of the court in setting aside the non-suit and reinstating the case was not error. The matter was in the discretion of the court, and it does not appear that it was improperly exercised. Goss *v.* McLaren, 17 Tex., 107.

2. The assignments of error are so general that the court might well refuse to consider them.

The only question, however, raised is whether the testimony was sufficient to warrant the verdict of the jury.

We have examined the statement of facts carefully, and we cannot say that their finding is without proof to sustain it.

It appear the Alexander draft came into possession of Zorn after it became due and was protested. He took it, therefore, subject to all the equities between the parties to it. When Mrs. Taylor paid him the $400, he knew, and George knew, that she was not liable upon the draft. By arrangement between George and Taylor, whatever loss was sustained upon the sale of mules to Alexander, for which this draft was given, or from non-payment of the draft, was to fall upon George. When the $400 was paid a settlement had been effected with Alexander by George, by which the mules were returned to George, and the mules were sold and the proceeds placed to his credit. Mrs. Taylor was ignorant of these facts. She believed her husband's estate was liable upon the draft, as he had indorsed it. But George and Zorn knew better. She paid the money under the belief that the mules remained in Alexander's hands, and that she could get them. She so understood from George and Zorn. It was with this "express understanding," and with the belief that out of the proceeds of the sale of the mules she could be reimbursed, that she took up the draft. Yet under these circumstances, and with the knowledge that Mrs. Taylor was laboring under a wrong impression of the state of the facts, induced by him, Zorn received the money from her. It is shown, too, that Zorn had in his hands, belonging to George, abundant means when Mrs. Taylor brought this suit to recover back the money paid, out of which, as Zorn expresses it, "to save himself." The transaction seems strongly marked with unfairness and

imposition. It would not be just to permit Zorn to hold the money so obtained. Sibley *v.* Hubert, 15 Gray, 509; Ross *v.* Armstrong, 25 Tex. Sup., 368.

Where a party pays money in ignorance of circumstances with which the receiver is acquainted and does not disclose, and which, if disclosed, would have avoided the payment, the receiver acts fraudulently and the money may be recovered back. Martin *v.* Morgan, 3 Moore, 365; Hall *v.* Pennell, 2 Md. Ch., 137; Neavitt *v.* Bank of Ft. Gibson, 1 Fr. Ch., 438; Guild *v.* Baldridge, 2 Swan (Tenn ), 295.

We are of opinion that the judgment ought to be affirmed.

AFFIRMED.

[Opinion delivered April 25, 1881.]